IN THE UNITED STATES DISTRICT COURT FOR
THE EASTER DISTRICT OF NORTH CAROLINA
WESTERN DIVISON
4:21-cv-87M
10-27-2022

FILED
OCT 31 2022
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY_____ DEP CLK

ROSIE HOPKINS (PROSE)          )
Plaintiff                      )
                               )
VS                             )
                               )
STATE OF NORTH CAROLINA et, all )
                               )
                               )

Defendants.

Pathways for People Inc
Jamie West, Michelle Sullivan, Gloria Rothrock and the Owner of Pathways.

NC INDUSTRIAL COMMISSON-
Tamara Nance Chief Deputy

Department of Health and Human Services
Pamela Gilyard Rita Horton and Stella Hayes

Apex Police Department Officers-
Officer Sean Myers and Paul Mitchel   McKinnon McKinney Chief Assistant

Judge Richard Myers II Recusal and Complaint will be removed against him.

Villages of Apex Club House HOA-Debra Gabrielle Anthony Sacco

**Motion: REQUEST JURY TRIAL**

1

**Note: If a Judge Make a Decision in spite of Request a Appeal is requested.**

## PATHWAYS FOR PEOPLE INC

This is an action under Title VII of the Civil Rights Act of 1964, as amended (Title VII) and Title 1 of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of wrongful termination, hostile work environment, retaliation, discrimination, and race to provide appropriate relief to Ms. Rosie Hopkins, who were adversely affected by such practices. Specifically, Plaintiff, Ms. Rosie Hopkins allege the Defendants, Pathways for People Inc, Behavioral Healthcare Day Program 15300 Weston Parkway Cary, Nc 27513 recipients of Innovation Waiver Program under Alliance MCO, subjected Ms Hopkins hostile work environment of Title VII as above and so below in addition to: This action will proceed on the Plaintiff's Title VII claims for alleged retaliation and discrimination based on race, color, and or sex against Pathways for People Inc; Section 1983 claims against "State of North Carolina DHHS," State of North Carolina Industrial Commission," and Officers McKinney and Sean Myers for alleged violation of Plaintiff's First, Fourth, Sixth, and Fourteenth Amendment rights, as applicable.

EEOC was filed right after termination due to incompetency of representative the claim was postpone due to numerous moving parts to the claim. Hopkins was suspended by Pathways on 1/2/19, terminated on 1/9/19. Hopkins continued to gather evidence to prove her innocence and injustice that has been caused to her. The last confirmed denial was reported by Carolyn Marcus on or about 12/ 28/2020. Pathways still had obligation up to 2 years to approve or deny Hopkins. They choose to deny Hopkins medical care after being injured by their client and during the hours of Hopkins being on duty. Later Ms. Hopkins was issued and Right to Sue Letter by the Equal Employment Opportunity Commission.

I Rosie Hopkins reserve the right to pursue legal action against any person or company in the first complaint, if I have been ill advised by any Judicial Member presiding over the case that forced me to remove certain parties from my complaint.

2

JURISDICTION AND VENUE

1.  Jurisdiction of the Court is invoked pursuant to 28 U.S.C 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706 f 1 and 3 of Title VII of Civil Rights Act of 1964, as amended, 42 USC 2000e-5 f I and Section 102 of Civil Rights Act of 1991, 42 U.S.C 1981a.

2.  The employment practices allege to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of North Carolina.

## **PARTIES**

3.  Plaintiff, Ms. Rosie Hopkins BA, MSSW, sought EEOC the agency of the United States of America charge with the administration, interpretation and enforcement of Title VII, 42 U.S.C 2000e-5 f 1 and 3, released/issued Ms. Hopkins a right to Sue Letter.

4.  At all relevant time, Defendant has continuously been doing business in the State of North Carolina and the City of Cary, and has continuously had at least 15 employees

5.  At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701 b and h of Title VII, 42 USC 2000 b g and h.

6.  Defendants list Above.

STATEMENT OF CLAIMS

7.  Rosie Hopkins filed a charge of discrimination with the Commission alleging violations. Conditions precedent to the institution of this lawsuit have been fulfilled.

3

8. From October 2018 until at least January 2019 and possible thereafter, Defendant engaged in unlawful employment practices at its Day Program in Cary, Nc, in violation of Section 703 a 1 of Title V11.

Specifically, Defendant subjected Rosie Hopkins, a former Habilitation Technician at Defendant's Day Program that created ***hostile work environment*** caused wrongful termination based on race and retaliation discrimination in willful and intentional failure to act to the call of duty.

VOACH-Edited the footage to protect their company form liability and falsely framed Hopkins because of the color of her skin. Race/Discrimination The worker is African American and the client is causation and a member at their club house. Conspired with every agency to accomplish their goal.

NCIC Race/Discrimination/Retaliation Tamara see section below:

DHHS- Race/Discrimination -and Retaliation Pamela, Rita, Stella

They all have removed or assisted with removing evidence to frame Ms Hopkins. Tampering with Evidence. The wrote false reports against Ms Hopkins and refused her right to correct issues of her complaint in the 2nd interview.

Title VII Race/Discrimination/Retaliation

Apex Police Department Sean Myers6 and Paul McKinnon

Race/ Discrimination Sean Myers failed to utilize proper probable cause, he refused to allow Hopkins to press charges, but then allowed and tried force Karen to press charges against Hopkins. Officer Myers profiled Ms Hopkins before getting all of the facts. He refused to get Hopkins eye witness Natosha Murdock statement of Zackary. ZB stated. "If we want to get rid of someone we know what to do." Sean lied under oath and also coerced

4

false statement from Zackary. Myers committed Civil Rights Violations/Human Rights violations against Hopkins. Myers also wrote up a false police report and a warrant that says something different. Paul Mckinnon agreed to all of Sean actions and backed him up.6

**PATHWAYS FAILED: October 31, 2018 to January 9, 2019 up to 2 years from incident on medical care.**

Title VII Race/Discrimination/Retaliation

Pathways discriminated against Ms Hopkins due race. Ms. Hopkins asked for guidance and help of what to do with an irate client. Jamie just stood in the parking lot and refused to assist Ms Hopkins. She stated, Were not dealing with that behavior today. Take him to his mother, but the mother refused her son and said take him to the club house. This created a hostel work environment and injury to the worker. The client began to beat and strike Ms Hopkins beating her in the parking lot and into the building and restroom. The Pfp and other conspire to framed Hopkins and blame her for the incident to avoid liabilities.

PFP retaliated against Ms Hopkins for leaving the position with Zackary. Ms Hopkins informed PFP she will be leaving the position with him and working as an AFT and if passed the test a LCSW. They met with his mother that has Hopkins take him out of his daily routine. The mother knew this would cause a problem, but it was done for program secuty because Karen and Zack informed Hopkins they were angry at her leaving them. The family company was concern who would be his care taker after Hopkins left. They worker together behind to scene to use Hopkins as program security. Karen knew if a worker tried to defend them self after the and ZB conspire for him to attack the worker and wait for their response they could use it. The destroyed Hopkins life and denied medical care.

5

- 1. RACE: The harassment of hostel work environment that was willful and negligent of PFP and female manager Jamie West non compliance with rules willful and intentional acts or non acts etc that lead to unwelcomed, violent, unsuspecting physical attacks made by Zackary beaty Koehler on to hab tech worker Ms. Rosie Hopkins an employee of Pathways for People Inc. Several Times, but 1-2-19
- 2. The client adult male 300 pd 5'7 deemed/documented in alliance behavioral health MCO during the time of my employment as a community risks documented as aggressive, explosive behaviors, self-injurious to self and others… of which PFP disregarded and tried to hide this information along with co conspirators. 10-31-18/1-2-19
- 3. The hostel work environment included supervisor(s) failed to act according to rules, regulations, laws, ncic act, and health and safety, Osha, and their own policy/ procedures, and insurance accident fund. 1/2/19 an 1/9/19 ongoing
- Jamie stated, "Were not dealing with that behavior today"– Leaving it all on Ms. Hopkins to deal with in a Crisis. 1-2-19
- PFP clearly violated their clients rights policies that also was to protect their workers.1-2-19
- Ms. Hopkins should have never been allowed to leave in a car with the client beating and highly aggressive by Jamie West.1-2-195

6

- 4. Jamie stated, Call his mother, come get lunch box/med bottle while in crisis, never once tried to protect the worker or client from his self on 1/2/19.

- PfP/Jamie failed to properly supply Hab Tech with the ISP Individual Support Plan in order to know how to handle the client in the event the becomes aggressive or violent-behavior plain. Date of Hire and thereafter

- 5. PfP/ Jamie Failed to show Ms. Hopkins the Book of policy or manual as she stated. PFP/Failed to report incident to NCIC, Osha, Personal Ins Carrier, failed to assist Ms Hopkins during a full blown Crisis at PFP or thereafter. They completely disregarded the worker and her injuries. DOH or after.2

- 6. Failed to address hab tech or client after seeing the client aggressively beat and broke Ms Hopkins console and attempting to open the door in a moving vehicle right Infront of their eye in front of the business office… about 2 ½ weeks prior Michelle and Gloria from incident on 1/2/19.

- 7. PFP failed to give Ms Hopkins updated PPE and Instructions after suspension or termination. Ms Hopkins was just told to wait until their investigation was complete.

- 8. PFP failed to protect worker from hazardous situations, failed by giving worker old, outdated documents/information on Hiring Paper Work and never gave Ms Hopkins a copy of the clients ISP individual support plan. PFP terminated Hopkins on false and wrongful grounds and pretenses of not using NCI

7

appropriately. PFP Terminated Ms Hopkins for not properly using NCI with the client. The mother Karen Beaty reported not to use NCI even in the event he become aggressive.

➤ 9.  NCI was unhonored and forbidden to be used by the State of North Carolina at that time and all providers were to submit a new curriculum.  Ms Hopkins was never given notice by provider PFP of their new curriculum or preferred after the state request changes. By January 1,2019.

➤ 10. They never gave MS HOPKINS CLIENT'S ISP (INDIVIDUAL SUPPORT PLAN) BEFOR OR AFTER 11/2018.

➤ 11.  They never TRAINED MS HOPKINS ON CIENT SPECIFICS ETC… She was only observed for his goals that she got weeks later due to Jamie being behind in paper..

➤ 12. PFP failed to PROTECT MS HOPKINS BY MAINTAINING SAFE ENVIORMENT

➤ 13.  PFP failed to INSERIVCE MS HOPKINS ON THE CLIENT BEHAVIOR NOT ALLOWING MS HOPKINS MEDICAL TREATMENT AFTER LEARNING OF INJURY/ACCIDENT

➤ 14.  PFP failed to CONDUCT A PROPER AND ETHICAL LAWFUL INVESTIGATION on incident 1/2/19. Only relied on DHHS Pamela Gilyard who also tampered with evidence and eared them from evidence she had and falsified interview documents and found Hopkins guilty within the first 5 minutes of the interview telling Hopkins to report to her she didn't have Hopkins side at that time. She to conspired with Apex Police, Anthony

8

Debbie PFP to frame Hopkins. Stella Hayes as was fraudulent and wrote up false reports on Hopkins.

➢ 15. PFP failed to FOLLOW THROUGH WITH GIVING MS HOPKINS DOCUMENTS AFTER SIGNING THE FORM as stated she would. 10/31/18.

➢ 16. PFP failed to CONSISTENLY ALLOW MS HOPKINS DOCUMENT CLIENTS BEHAVIORS ON THE ABC LOG.

➢ 17. PFP failed to PUT IN PLACE A SAFETY PROCEDURE WHEN SEEING THE CLIENT IRRATE IN A HAZADOUSE STATE-CAR AND SUV.

➢ 18. PFP failed to Provide all necessay medical services to the employee or any for that matter. 1-2-19

➢ 19. PFP failed to Report the injury to the carrier/administratior and file a Form 19 Report of Injury within 5 days with the industrial Commission, if the employee misses more than 1 day from work or if cummulative medical costs exceed 2,000.00.

➢ 20. PFP failed to Give a copy of your complete Form 19 to the employee along with a copy of a blank form 18 Notice of Accident. 1-2-19 or after.0

➢ 21. PFP failed to Ensure that compensation is promptly paid as required under Workers' Compensation Act.PFP commited frad workercomp fraud by hiding a crime of the worker getting beat by a client so they would not have to pay or be liable.

➢ 22. PFP failed to/ comply with federal/state safety laws.

➢ 23. PFP failed to Immediately report to its carrier or administrator any injury or occupational disease, or

9

allegation by an employee of an injury or occupational disease Sustained in the course of employment for which the attention of a physician is needed or actually sought (Sought is a verb, to arrange systematically or resolve a problem, Sought means to search or look for..)

➢ *24.* PFP failed to *Within five days* of knowledge o**f the injury or allegation, the employer or carrier/administrator or its successor in interest ***shall file*** with the Industrial Commission ***and provide a copy*** to the employee of a Form 19, PFP failed to Employer's Report Employee's Injury to the Industrial Commission. Then Carolyn Marcuse said the claim was baseless and had no merit, but the NCIC stated different. This was done to commit fraud against Ms Hopkins claim, of not giving the payout.

➢ **25.** PFP failed at **§ 95-129. Rights and Duties of employers** Each of his employees conditions of employment and a place of employment free from **recognized hazards** that are **causing or are likely to** cause death or **serious injury** or serious **physical harm** to his employees.

➢ **26.** PFP failed at **§ 97-9** Secure the payment of compensation to his employees

➢ 27. PFP failed at violating accident fund of not reporting clam… prevention abiding by their health and safety policy..Then reported a falsified situation of accident to cover tracks and frame Ms Hopkins.

10

➤ 28.  PFP assisted in the cause and conspiracy of Ms Hopkins being falsely arrested and maliciously charged. ETC…

➤ 29. PFP failed to follow rules set fourth IN NC WAVIER PROGRAM WITH ALLIANCE.

➤ 30.  PFP failed to update their paper work hiring papers of NCI.

➤ 31. PFP failed to honor or acknowledge and under or over stan.9d.**§ 97-6.** No special contract can relieve an employer of obligations. (1929, c. 120, s.7.)

➤ **32.** PFP failed to  **NC GS 97-12 obligation** on the employer to comply with federal /state safety laws. An employer shall immediately report to its carrier or administrator injury or occupational disease, or allegation by an employee of an injury or occupational disease sustained in the course of employment; PFP or its successor shall file with the NCIC and provide a blank form 18.----Employer Willful Disobedience.

➤ **33.** PFP failed to **GS 97-92a Form 19** Employer's Report of Employee's Injury or Occupational Disease to the Industrial Commission. PFP failed to comply with reporting the injury and providing the employee with a copy of form 19/18.

➤ 34. PFP failed to 11 NCAC 23A .0104 Employer's Requirement to File First Report of Injury, but filed all other reports instead.*.

➤ **35 Hopkins** produced reports of ***evidence*** of an injury by accident or occupational disease or illness arising from the course and scope of her employment with the Employer-

11

Defendant on 1/2/2019 or thereafter; PFP failed to acknowledge and accept 9 page report of accident Ms Hopkins wrote etc… AS TRUTH, just to avoid liability and fabricate their narrative.

➢ **836 PFP** willfully and intentionally was negligence of employee. Appeal NC Adjudicator in Unemployment claim wrote: a and b. Disqualified for benefits for misconduct connected to work—willful or wanton disregard of employers interest as is found in deliberate violation or disregard of standards of behavior oral or written  conduct evincing carelessness or negligence recurrence as to manifest an intentional and substantial disregard of employers interest or employees duties and obligation to the employer.

➢ *37 Based on the "Law" as applied to he facts of this case*, its concluded **Ms Hopkins discharge was not for misconduct connected with the work.-.82 Decision Date February 11, 2019 1477906  829711**

➢ 38 PFP failed to provide a back up staff for assistance in crisis and Karen failed to show in a timely manner during crisis, she came as she stated 11:45 once it was over and Hopkins was taking him home. Hopkins exhausted every options, she was told not to call 911 but Jamie or his Mother Karen and they all failed her.

12

➢ 39 PFP failed to act in Due Care that caused Negligence when visually seeing the client in Ms. Hopkins backseat in full Crisis and Violently beating with his hand and fist irate.-

➢ 40 PFP/ Jamie, Michelle and Gloria failed to understand or act in Due care and caused negligence even being eye witness to event of seeing him open the SUV Door while in motion to jump out or on 1/2/19 clt seen beating Hopkins personal property endanger both person. Specifically, negligence is the failure of a person to use due care in a certain situation; failing to act as another average person would have done.

➢ 41 Ms Hopkins plaintiff did not fail "to exercise due care for her own safety in respect of her injury's due to supervisors failure to act." Instead Ms. Hopkins was framed, arrested, blamed, and charged due to acting in Self Defense of case no harm to the client only extended her arm to keep him aways in fear of and foreseeing him charging at her to do more harm with his hand and arm raised at to continue to beat and strike her. Under the law 14.51.3 and 14.51.2. PFP all worked with the officer Sean Myers once they all met at the villages of apex c.h. and reviewed the footage together on 1 9 19, PFP failed to clarify knowledge of Officer Training CIT, in dealing with this population. Inorder to avoid liability and responsibility they all conspired together to conceal the truth of the matter to avoid liability; Ms. Hopkins was the person beat and tortured by Zackery Beaty

13

Kohler and slip and fell on item left in hall and watery substance in the club house.

➢ 42  On 1/9/19 Pathways for People Inc unlawfully terminated Ms. Hopkins, for failure to properly use "NCI" on 1/2/19.

➢ 43 Pathways failed to in-service Ms. Hopkins on their updated approved training after NCI had been terminated from use by the State of NC on or about December 2018.

➢ 44 Pathways provided Ms Hopkins with old out dated hiring material and none at all on specifics of her job description on how to handle Zackary Beaty who needed specialized care and staff. PFP failed to train Ms. Hopkins or allowed her to participate in ISP meetings along with Legal Guardian Karen Beaty, who refused Ms Hopkins participation the meeting at thief home.

➢ 45 Pathway's failed to give Ms Hopkins ZBK official goal sheets in timely manner to bill on, they were given about two weeks later.


➢ 46 Pathways failed to give Ms Hopkins the client ANY/ OR UPDATED ISP Individual Support Plan said, they were still working on it; when Ms Hopkins asked for it. (PPE/ISP)


➢ 47 Pathways always relied on the fact that Ms Hopkins previously worked with him at Q1 Clinicals (it was extremely brief 2 to 3 wks)before Karen constantly antagonize Hopkins

14

to get him in at PFP, as an excuse for their non compliance to adhere to the laws, acts, and rules of NC /Alliance.

➤ **48 Pathways for People Inc failed to assist Ms Hopkins in a crisis and or due to knowing or should have known about Zackary's aggressive actions and nature.**

➤ 49 This forced Ms Hopkins to rely on the only ISP she had that was from Q1 clinical and in that ISP it stated the following about the client Served: see ISP.

➤ **50 ALLIANCE BEHAVIORAL HEALTH**

PROVEN DOCUMENTED FACTS OF ZACKARY'S BEHAVIOR

ISP START DATE: 8/1/2018

➤ 51 …LONG RANGE OUTCOME- JUSTIFICATION- Due to ZBK extreme behavioral episodes (non compliance, managing frustration verbal outburst/ aggression, tantrums, etc) Zackary needs to be followed by a licensed professional who is capable of designing a behavior intervention plan; monitoring the plan; and training staff, family members on the implementation of the plan.

➤ 52 Ms Hopkins was never trained on the above at Pathways for People Inc or any organization nor participated in any meeting concerning the ISP thereafter. The mother refused to allow Ms Hopkins presence at the meeting.

➤ 53 Ms. Hopkins was not a licensed staff and was not equipped to handle adult male 300 lb ZBK aggressive nature 2 of their organization. (Hazardous Situation)

➤ 54 Behavior Concerns: Overly Rigid Thinking, Self-Injurious Behaviors, pound fist and forearms onto granite countertops

15

at home, hits self, history of pounding chest, beat on legs, Pushes others arms with his fingers, Has destroyed property when upset, needs STRONG SUPERVISION TO ENSURE SAFETY, wants to be in control, limited coping skills regress to screaming or tantrums,

➢ 55 5Significant Events that may cause Increased Stress Trigger Crisis-NOT--Sticking to a schedule— Triggers-Transitioning, Restrictions, Not getting his way.—**Jamie and Karen caused full Crisis/ Hostel W.E.**

➢ 56 Due to explosive behaviors at Pathways of ZBK kicking the wall, hitting objects, pushing ppl in the gut qp's and beating the chair arm pounding his fist in the Quiet Room; Jamie and Karen decided without Ms. Hopkins out of the blue one day, at the last minute that he needed to be taken out of the program for a period at the onset of behaviors/aggression/not following rules. According to his ISP, when his schedule is not followed it triggers him ..that leads to a health and safety risk and full blown crisis.

➢ 57 Jamie told Ms Hopkins **"Were not dealing with that behavior today." "He and not come back today."** (Qp listed as a back up staff in crisis)1-2-19

➢ 58 The mother failed to show up while her son was in crisis; she stalled and waited 30 minutes to an hour after it was over. (mother was listed as backup staff)----The mother knew about this attack.

16

➢ 59 Community Living Supports T2013 TF money management, personal hygiene etc, Respite Individual Services (S5150) **so family can get relief from responsibility and stress of care taker duties**.

➢ 60 ZBK mother <u>now will be able to meet or participate in planned or emergency events</u>, and to have planned time for her and or family members.

➢ 61 Pathways failed to investigate were there issues in the past where the mother failed to show in crisis as she did for Ms. Hopkins.

➢ 62 Long term intervention needs via behavior plain. Zackary's support team will receive behavior consultation which can be used when zb is not in crisis. Ms. Hopkins never revised zb Behavioral Consultation.

➢ 63 Specific Recommendations For Interacting With The Person Receiving a Crisis Service.

➢ 64---**<u>MOTHER HAS REQUESTED NOT TO HAVE NCI INTERVENTIONs USED ON ZACKARY, EVEN IN THE EVENT OF PHYSICAL AGGRESSION</u>**.

➢ 65 It was founded Pathways did not thoroughly read his case study or they would not or should not have terminated Ms. Hopkins due to the above statement by his mother of NOT using NCI or knew and still failed to act accordingly to the law/rules etc. Once Ms. Hopkins brought up the fact that she was following his ISP, PFP fabricated a reason of such it was in their information, but it was never given to Ms.

Hopkins for review, and it also conflicted with a direct order of the legal guardian.

➤ 66 Ms. Hopkins was only following instructions and was immediately suspended by Jamie West on 1/2/19 and terminated 1/9/19.

➤ **67 Retaliation:**

➤ 68 Ms. Hopkins was leaving the position with ZBK, leaving PFP without a replacement for him. This angered Karen and Zackary.

➤ 69 Ms. Hopkins soug3 B 264.6 545ht another client to work with at PFP with Jamie to fit new schedule after being approved for Alternative Family Living Afl and taking her Licensed Clinical Social Work Exam on 1/4/19.

➤ 70 It was discovered that Ms. Hopkins a African American female had Higher Education than 95% of the management staff including Jamie, Michelle, and Gloria.

➤ PFP have hindered Natasha Murdock form testify being any eye witness to Zackary stating, "If we want to get rid of someone, we know what to do". They District/ Superior Court all interfered with witness's in testifying.

➤ Pathways for People Inc have not been held accountable. Furthermore, whether Hopkins was falsely convicted of the crime or not As an employer Pathways for People Inc still have an obligation. They wrongfully terminated an employee and they have not been held accountable for their wrongdoing. Unemployment hearing said Ms Hopkins was not guilty, but every other court room

18

said otherwise just to cover up their crimes. There are laws/rules in place that PFP did not follow. Every court District and Superior Court made sure they PFP did not show for the Trials. Therefore it doesn't matter if the District or Superior courts found Hopkins guilty on abuse, (wrongfully). The fact remains this case is against the employers for not abiding by rules, polices, procedures, ncic acts, and health and safety, Osha etc (wrongful termination is the issue amongst others). Let's not forget that, why your trying to dismiss or deny this complaint. This is another reason I would like for Judge Myers II to step down.

**WORKERS COMPENSATION – TAMARA NANCE SECTION**

NORTH CAROLINA INDUSTRIAL COMMISSON

JUDGE TAMARA NANCE CHIEF DEPUTY COMMISSIONER acting for and on the part of

THE NC COMMISSON.225

**Tamara Nance** has ORCASTRATED A HIDDEN PACK amongst JUDICIAL MEMBERS and

others TO hide and conceal their heinous acts against Rosie M. Hopkins.

Race Discrimination Retaliation

1. Tamara Nance Conspired to conceal crimes she and others committed by placing an order of sealing the evidence that incriminates HER and others, to falsely frame defendant Rosie M. Hopkins to avoid clearing Hopkins name and avoiding liability and payouts.

2. This order was placed after Ms Hopkins informed her that she was filing a federal lawsuit against her and the NCIC. Then she contacted Federal Judge Richard E. Myers II and Numbers to work with them to stop Hopkins from submitting her evidence that proves this claim. J. Myers did not acknowledge Hopkins claim that had already been longed filed that not until Hopkins notifie7d Nance in an email and in the opinion of award c. stipulation documents she was and had filed a federal lawsuit and it didn't matter what her decision was because she clearly acted fraudulently in and out of the scope of her duties and violated judicial code.

3. Tamara Nance stated that he did not hit or touch Ms Hopkins when the evidence shows zb hitting and striking Ms Hopkins multiple times with his fist and knuckles etc, but witness testified he only did one poke w his index finger she and they demonstrated on record.

20

4. Tamara Nance went off the record during the hearing to cover up testimony and to aid in covering up the evidence that is a audio of McKinnon stated he saw what zb did to Ms Hopkins shoving and pushing her.

5. Tamara sabotaged subpoenas to stop Jamie's Natasha Zackery from testifying.

6. She denied expert witness Chris clay signed affidavit stating the evidence was either was edited or missing clips.

7. Tamara Name gave a false ruling to assist with conspiring with Carolyn Marcuse and discriminated against Ms Hopkins multiple times. At times she gave Marcuse months to prepare for the case, but only gave Ms Hopkins a week or so when time was requested. They all conspire to conceal the record and evidence.

8. Tamara Nance/Carolyn Marcuse got in contact with every organization that delt with this case behind the scene to get them all to collaborate with giving false information, delay, remove records, place false diagnosis in Ms Hopkins port health records, in order to control 6the narrative.

9. This caused my counselor to become terrified and drop me from her case load because she did not want to get dragged in this legal battle, she stated. She was then place and relocated to the state of GA. So she could not get called to testify on Ms Hopkins behalf. 25 They did not want the injury of mental anguish that they all caused along with PTSD, stress, depression etc to work in my favor so they had them to place a false dx of delusional to cover their tracks lol. When they are the ones who is delusional.

10. She conspired with the NCIC to kicked Ms Hopkins out of her own hearing with the board, but act as if they tried to assist in every way. Hopkins requested a call, to help with technical issues they refused. Hopkins's waited a year to two years for just to covered it up as if

they tried to assist, but did not it was all a cover up to hinder and reject Ms Hopkins due process rights and to conceal the crimes they had falsely against her. 0

11. Tamara Nance worked with Judge Rosier to violated Ms Hopkins constitutional rights of self-defense, hindered incriminating evidence of NCIC to be admitted, Zackary Beaty, Pathways for People from being at the trial, judicial misconduct and more.

12. ADA Simon always had something to say about Hopkins federal lawsuit at M4s Hopkins jury trial.

NORTH CAROLINA -IC

WANDA TAYOR

Discrimination/Hostel

Scope of Judicial Power-The Agency must follow its own rules, comply with the Administration Procedure Act, act within the scope of its delegated authority, avoid acting in an arbitrary manner, and make final ruling that are supported b.y substantial evidence..

Tamara Nance a representative of NCIC, has unlawfully acted and conspired in and outside of her jurisdiction to ensure that there is and will be biased and partial judgment, abuse of judicial discretion .against Ms. Rosie Hopkins in concealing, sealing, hiding, placing order to hide their crimes, removing, tampering with evidence in the areas of Superior Court Jury Trial, Federal Case, Worker Compensation Claim, The Appeal Board, Appeals to the NC Attorney General Office and Wanda Taylor Decision, Apex Police Department/ Asst Chief Mitchel McKinnon, Sean Myers, Villages of Apex Club House, DHHS, and Pathways for People Inc /Carolyn Marcus along with Port Health in giving false dx after they requested doctors records and contact information in

22

attempt to place a falsified medical errors on to Ms. Rosie Hopkins to cover up Tamara's and the other co conspirators actions and their violations of the NCIC Act, US Constitution, Employment Law, Rights to Appeal, BUT deny or over look and or not apply all others as they were shown or should have known.

1. Tamara Nance have taken over the control of the narrative since presiding over the nc worker compensation claim by hindering Ms. Hopkins the right to use her own evidence that was submitted to NCIC claim in other judicial court cases federal and state. Tamara Nance and or her team have contacted key individuals in order to prevent the truth from being revealed and payout for what is rightfully owed to Ms. Hopkins.

2. Tamara Nance enforced an order/rulings that have stopped and or prevented evidence1 and or witness's for coming forth to testify or being presented as evidence in the following courts such as District Court presiding Former Judge Michael Denning's No 19-CR 200-588, Wake County Superior Court, Judge Vinson Miller Rozier No:19-CRS-200-588 and Judge Myers Federal Court and or his coworkers/team.

3. Ms Hopkins submitted to Chief Dept Tamara Nance about a 331 page…. Contentions and Proposed Opinion and Award/Stipulated Document (Book of Evidence) proving her claim and discreiting the opposing party and PFP and other witnesses' testimony. She filed Protect Order..

23

4. Tamara Nance violated NCIC own Work Related Injury or an Occupational Disease Act/Policy/Rules/ US Constitution.

5. Provide all necessay medical services to the employee. Report the injury to the carrier/administratior and file a Form 19 Report of Injury within 5 days with the industrial Commission, if the emploee misses more than 1 day from work or if cummulative medical costs exceed 2,000.00. 6Give a copy of your complete Form 19 to the employee along with a copy of a blank form 18 Notice of Accident. Ensure that compensation is promptly paid as required under Workers' Compensation Act.

6. Tamara Nance created a false illison/denial on **Ms. Hopkins compliance NCIC/ Osha requirments:** Report the injury or occupational disease to the Employer immediately. Give written notice to the Employer within 30 days. File a claim with the industrial Commission on a Form 18 immediately, but no later than 2 years from injury date or occupational disease. Give a copy to the employer. If medicial treatment and wage loss compensation are not promptly provided, call insurance carrier/adminstrator or request a hearing before the Industrial Commission using a form 33 for Hearing.

7. The Deputy Commissioners, Special Deputy Commissioners, and Legal Assistants of the North Carolina Industrial Commission endeavor to fairly, impartially, and efficiently adjudicate contested claims by encouraging settlement wherever possible; and by providing timely and excellent customer service to all parties. They all failed to apply law, due process and rules and regulations accordingly.

24

8. Ms. Hopkins requested for additional medical compensation; change of status in condition requested 12/30/20. Open Medical requested for claim. TAMARA LATER LIED AND ACTED AS IF MS HOPKINS DID NOT REQUEST OR INQU1IRE THE CHANGE OF STATUS IN CONDITION ALTHOUGH SHE RESPONDED TO IT IN AN EMAIL.

9. Tamara Nance altered/distorted picture evidence in attempt to stop other from getting a clear view of Zackary Attacking Ms. Hopkins and the formation of his hand in fist and knuckle formation etc.

10. Tamara Nance witness video evidence did not align with witness's Pathways for People Inc and Chief Paul Mitchel McKinney Mckinnon testimony of Zackary poking Ms. Hopkins with only 1 index finger.

11. Tamara Nance went off the record to cover up parts of Paul McKinnon testimony of audio that witness to him seeing and hearing Zackary slamming Ms Hopkins up against the door/wall. She took it off the record to protect the officer from incriminating himself and to further aid in conspiring to frame Ms Hopkins in rendering a denial of benefits. Insurance fraud.

12. Tamara Nance witnessed he audio of Paul McKinney stated he saw 15 minutes before you all approached the rest room to about 20 minutes after. Paul fabricated his story behind the time after they got together behind closed doors. This is the reason in district court Hopkins was found guilty on a edited 3 minute video footage clip presented by ADA Austin Braxton from about 11:28-11:30, now in Superior Court the video exceeds over 14 minutes and at

25

one time Arturo states 666witness said it was 25 minutes, but Judge Rozier threatened Hopkins not to say anything an allowed the witness to change his statement unlawfully once he was shown the evidence was different right in open court then immediately /relieved the jury members then brought them back in after he threatened Ms. Hopkins.

13. Tamara Nance worked behind the scenes with them because the video and times of the scenes in her hearing were not going along with their witness testimony. Tamara worked closely with Mary Ashton Slagle in attempting to stop the workers compensation and tried to have Ms. Hopkins falsely and unlawfully committed to cover up their conspiracy to frame and unlawfully charge her, when Paul was subpoenaed to come, Nance reneged on already signed subpoenas of Michael Denning, Natasha Murdock and James West then threw them all out preventing them from testify tampering with witnesses and evidence.

14. Ms. Hopkins is highly intelligent and I'm sure you all know this by now since 2019 in many attempts and delays and sabotage Ms. Hopkins claim, character, and cases. J. Rozier created a false charge of abusing authority subpoena and sabotage all of Hopkins other witness from appearing in court just 1 day or so before the trial696 started. Then once trial was over he threw out his factious charge, it was only designed to destroy Ms Hopkins case to the state could have the upper hand, a clear violation of Ms Hopkins human and constitutional rights/due process.

15. Tamara Nance constantly discriminated against Hopkins /showing Carolyn Marcus favoritism. Nance gave Carolyn Marcus several months to complete or catch up with her

documents, but when Ms Hopkins request time around July 22, 2021 to complete the contentions and proposed opinion and awards Nance only gave Hopkins 1 week extension. When Ms Hopkins called her out about it and filed a complaint against her, she recreated a lie to cover up that by giving a falsely illusion that she gave Ms Hopkins additional time, but that was false she did not even notify Ms Hopkins of additional time before hand. It was a stunt to cover up what she got called out on.

16. Zackary Beaty ISP clearly explain his violence, explosive, defiant, aggressive, behaviors to say the least. He is a community risk, danger to his self and others at the time Hopkins provided service to him. Tamara placed and order to seal this document of evidence along with hundred of others documents and information from being used in Ms Hopkins Superior Court JT.

17. Carolyn Marcuse kept accusing Hopkins of not proving 58her claim when she was in fact doing so, The more Ms Hopkins proved her claim, the More Tamara Nance hide, removed sealed, altered distorted blackened out, mis handled in order for her to deny Hopkins claim and help aid in getting Ms Hopkins a guilty verdict to aid with her unlawful decision.3

18. Tamara Nance refused during the hearing to allow Ms Hopkins to refer or read allowed the NCIC Act, rules, policies or procedures on record.

19. IC No 20-044326 Tamara Nance witness Deborah Gabrielle state, "No" to this statement: You never saw Ms Hopkins hit Zackary? "NO" page 128 in8 transcript

27

20. Tamara Nance reviewed ZB ISP and it stated he is a community risk and use his disability to get out of trouble. Karen the mother stated not to use NCI, so how was Ms Hopkins terminated by Pathways if she followed the rules. Ms Hopkins was terminated for not using NCI correctly.

21. Tamara allowed and accepted PFP/CM in denying a valid workers compensation claim and assisted with covering up most if not all evidence submitted to NCIC1 to discriminate and conspire unlawfully to deny benefits to Ms Hopkins.        ---Discrimination – There are several federal and state laws that protect employees against employment discrimination. Under the law, it is illegal for an employer to discriminate/retaliate against his employee through hiring, promotion, contract, failing to give ppe, giving of benefits, compensation, and termination on the basis of the employee's disability, age, nationality, religion, race, gender and even genetic information. ---Breach of Contract – Although most states adhere to the principle of employment at will, there are instances when employment is set in a contact. Employment contracts are legally binding on both the employer and the employee so any violation of its provisions can give rise to a lawsuit.

22. Tamara was aware that this occurred, but covered it up instead and turned a blind eye. Willful and Serious Misconduct – employers will be held liable for "serious and willful misconduct" if he/she was aware of a *dangerous condition at work yet deliberately failed to take corrective action*, which resulted to an employee's injury.

23. **Tamara Nance was full aware of Ms. Hopkins plans to take further action in this matter**, of a personal injury federal lawsuit along with civil rights violations etc and will not give the Industrial Commission and or Pathways for People Inc the option to opt out at that time.-- This is when Tamara Nance contacted the Federal Courts and Communicate with them further stopping Ms Hopkins from proving her evidence that she quickly sealed in order to protect her own (A) of assisting with framing Hopkins as well as others.

24. Section 143-291 (a) of the North Carolina Tort Claims Act specifies that if a government officer, employee, or **agent is acting "within the scope of their duties" and negligently causes harm,** the person who was injured may bring a claim against the government. Tamara Nance was well informed of this, but choose to still violate her office, oath, Hopkins human and constitutional rights ect.

25. Hearings were held on May 5, 62021 and March 26, 2021 before Chief Dept Tamara Nance Commissioner.

26. Tamara Nance states the following statements below and Hopkins give response. Tamara misapplied the law and her discretions to wrongfully deny claim. This is what needed to be proven and Ms Hopkins proved it, Nance denied it.

27. .**Defense/ Court Issues of Concern Addressed:** 1.The Court/Ms. Marcus is suggesting here, and it's not just in this case but happens in many cases, sometimes before

29

you get to taking evidence from the doctors, there's first a determination. This determination was not made due to the fact the Employer failed to act in a timely manner or at all for that fact in getting Ms. Hopkins the medical attention she needed, within the time required. There is no need of a doctors first determination at this point when you have the doctors treating notes in place. Furthermore, Ms. Hopkins has asked and requested medical attention from the employer, but all have been denied /short lived. This fall on the employer for failure to act, when Ms. Hopkins informed them she was injured and very explicitly explained. She opened the floor for the defendant to seek additional medical records to prove otherwise and she stated she would not deny them if they're factual.

28. 2. Court/Defense Was there an injury by accident arising out of the employment?" Yes, Ms. Hopkins explained several times that she was hurt and injured from being hit, shoved/slammed, and struck by Zackary, she explain she slipped and fell at the location of the accident on a watery substance and item left in the hall. To the point the head trauma caused her nose to bleed the day after for 3 days straight.

29. Ms. Hopkins has medical and psychological records verifying the event and injuries sustained. 3. Court/Defense If the claim is found to be compensable, if there was an injury by accident, an event happened, then the question becomes... Ms. Hopkins has provided X-rays and records show arthritis, bone spur, minimal degeneration etc see Medical Exhibits for further details. You can clearly see in the evidence of the: video, photographs, and audio was shown/submitted an emailed at the hearing and before that Ms. Hopkins was in FACT, abused and injured by the client. There were scenes that were edited out, but Ms.

Hopkins non verbal language spoke volumes, holding her shoulder after ZB struck her, her mouth wide open, appear to be crying at times, and in distress/pain, and fear. It's heart breaking to even think about what they edited out 30+ minutes of missing deleted footage to conceal the full turmoil and horror she experienced on that day and still suffer to date just to avoid liabilities.

30. Court/Defense What injuries did you sustain as a result of that event? See Medical Exhibits...multiple Back, nerves, muscles dysfunctions, etc...So whether or not you developed PTSD from the alleged incident would come into the second stage determination but my only concern is to the extent any medical records **might reference the event** or **medical records reflecting treatmen**t for the event _soon after the alleged event occurred_.

31. Due to Ms. Hopkins initially believing in her employer that they were assumed to conducting an ethical investigation with the state Department of Health and Human Service Personnel Division soon discovered fraudulent/conspirator activity on their part. Ms. Hopkins did not have any insurance and depended on her employer to abide by the laws that govern the state and their organization. Point- you asked above---or _medical records reflecting treatment for the event soon after the alleged event occurred_--- again this **falls on the employer for failure to act** and **provide medical attention**. Ms. Hopkins followed all of the recommendations, rules, and timeframes in connection with filing a worker compensation claim. Ms. Hopkins was still injured when she was terminated after being brutally attack by their client. Then discovering foul play put more stress on Ms. Hopkins mentally leaving her to fall in the cracks and neglected of having no one to turn to. It was

31

Case 4:21-cv-00087-M   Document 21   Filed 10/31/22   Page 31 of 65

the new employer responsibility to get Ms. Hopkins the care she needed. She even tried to seek help with her new employer for injuries from Pathways that untimely led her in getting terminated. It was not there responsibility or liability. She informed her employer thoroughly with various methods explaining she was attacked and injured. They knew this but still failed to act, according to law and regulations. **PTSD** symptoms (i.e. nightmares, flashbacks, insomnia, or mood changes) are reflections of the brain trying to cope with trauma. Some on set of this Dx may be immediate others may be delayed and not show till a month later or to be fully dx meeting the criteria it may not be made until 6 months later.

32. 5.Court/Defense What is told to the doctors when you go to the **doctor right after and things like that is relevant** in determining whether or not there *was actually an event*. This is correct, which is why Ms. Hopkins records are consistently and relevant to the event/ accident she suffered from developing a mental impairment and physically injured to her person by the volatile aggressive client. ---Whether or not there was actually an event ---a worker was falsely accused and prosecuted maliciously by defending herself from further abuse and strikes by the aggressive client.

33. 6.Ms. Hopkins informed every medical/mental practitioner she seen about the assault/slipnfall on 1/2/19, by her client; she is and has been, very consistent with details; which is very key to her credibility. * Angier Medical Reports- shoulder pain, neck pain M54.2, headaches, chest pain R07.9, back pain M54.9,--being hit in her neck and shoulder while at work. She had ongoing anxiety and depression Z13.31 surrounding the attack Jan 2, 2019 1/4. See full report. *.Port Health-Patient was involved with an individual

32

approximately Jan 2, 2019, agitated physically and verbally abusive.-.--legal battle over this incident. My career has been ruined. She has been upset ----tearful during the entire interview.—she was set up and that a male client beat her ---extremely sore with her whole body sore and achy. See full report.  *Brookside Radiology –Spinal Biomechanical alteration noted. Unconvertebral arthrosis and facet arthrosis, mid and lower cervical spine. There is suspicion of mild basilar invagination. 3/19Mild Back Pain—1/2/19 A client beat me up. See full report.  *Kinston Chiropractor --Neck Pain, Palpation muscle spasms was found in cervical region, thoracic region Motion pappable fixation was found in bilateral C5 T5, CMT Spinal Region 98940 M79.12,Segmental and Somatin Dysfunction .  "A client beat me up." See full report

34. 7See Additional Reports further and full documentation on health care provider/ chiropractic/ & mental health provider details below in EXHIBITS.Ms. Hopkins also wears a back brace in when in server back pain and times when not in serve to support her lower back. She was visually seen wearing it in court, out in the community, she was seen having difficulty at times during the hearing, which is the reason Marcus inquired to the employer of Ms. Hopkins issues. How would they know Ms. Hopkins was not allowed to return to work remember she was suspended immediately on 1/2/19 and terminated on 1/9/19.  It appeared to have been difficult seeing Ms. Hopkins in pain and agony as she had to recall the horrific accident that she was unsuspecting of. When they saw Ms. Hopkins reenactment she scream and welp sending her back into that very moment. This reaction is consistent from the criminal trial, worker compensation hearing, Apex PD meeting, and Pathways report of events.  At this time, Ms. Hopkins has completely worn out the back

brace less than 2 to 3 months of having it. She is in the need of additional adaptive aids to assist her in recovery and additional laser treatments etc..

35. 1). Claimant was a 37 year old AA female at the time of the accident that occurred on 1/2/2019, she is 41.0 years of age. She worked with Pathways for People Inc from 10/31/2019-1/9/2019. (Employer) fist suspended Ms. Hopkins on 1/2/19 around 3:30 as she explained to her direct supervisor Jamie Haddock QP that she was injured by Zackary Beaty. She was told to write a report and submit that to the office as well as meet with the managers as to what had occurred. Claimant never denied her injuries as a matter of fact she not only 1) verbalized this to her employer Jamie on 1/2/19 that day over the phone, 2) she sent a text to continue to express how horrible she felt and described the pain/aches, yet they still did nothing. She was beat and struck multiple times seen in the video and still shot photos. She constantly let the employer know she was injured to the point she 3) submitted a 9 page report very descriptive to Pathways/Gloria. Then met with the employer (managers Gloria and Michele) and 4) gave a vivid detail description and reenactment of the accident in their office.

36. Ms. Hopkins testimony has always been consistent and creditable as she did 5 her best to recollects the horrific inhumane event and ongoing circumstances which is the closest to the video footage that explains odd and strange changes over the past years of constant edits and time laps and images in certain segments that have never been explained by anyone, but Ms. Hopkins. Due to others covering to conspire and conceal raw evidence proving Ms. Hopkins innocents and her being viciously attacked.

37. Pathways for People Inc failed to provide medical attention and or workers compensation to Ms. Hopkins. Instead she was immediately suspended 1/2/19 and terminated 1/9/19 the day Hopkins called the cops to the clubhouse to view their edited footage and to press charges against Zackary Beaty .

38. **Was Zackary Ever Abused, Injured, Hit, or Hurt.** 1No: His mother confirmed he was NOT hurt at all or had any complaints of being hit or harm by Ms. Hopkins not until the Officer, Sean Myers conducted his investigation against Ms. Hopkins did ZB story change 1/9/19. APS report No Injuries listed. As a matter of fact, KB told Ms. Hopkins while she attempted numerous times to get ZB out of Ms. Hopkins car that she knew it was him NOT her. "Rosie I know it was him not you," were her exact words she repeated. She recorded it with her cell phone that Apex Police Department has listed as the Family Video. The mother told Ms. Hopkins she had an appt and wanted her to take ZB to the library to 3pm.

39. **Accident and or Occupational Disease arise out of and in the Course of employment.** Did the alleged accident and or occupational disease arise out of and in the course of Claimant employment? Yes, Ms. Hopkins was given the authority by Pathways for People Inc, to take the client out into the community in the event he had behavioral issues at the program as an alternative method for a period. They also relied heavily on his mother's suggestions and recommendations. This was a recent add on discussed by his legal guardian and direct supervisor Jamie not long before the incident

35

occurred. Ms. Hopkins did as she was instructed to do by her direct Supervisor Jamie Haddock and the clients' mother. Ms. Hopkins was on duty at the time of the accident, due to the fact it has already been established during the hearing on March 26, 2021, there were no objections and all agreed; the accidents did arise out of and in the course of employment.

40. A). Ms. Hopkins reports being on duty during work hours 9-3pm in between the hours of 11-12, she was tortured, beat and struck by the client multiple times fast and hard. Ms. Hopkins reported that she was also slammed / shoved up against the restroom door/ wall by the client. This caused her to become hysterical at one point she ran out the restroom slipped and fell on the floor and wall on a watery substance and item left in the hall way, after she was barricaded and slammed by the client, she attempted to get help, but no one was around. Due to not seeing anyone she also ran to the camera in the corner of the restroom and screamed for help. Pamela Gilyard also showed Ms. Hopkins this scene on her cell phone recording and asked her what was she doing? This showed Ms. Hopkins standing in front of the camera with an open month screaming (her head off) –saying HELP! Pamela Gilyard and Stella Hayes have now disposed of it to conceal evidence/conspiracy with VOACH etc. The lobby area Ms. Hopkins ran to was disserted at that particular time she ran for help. Which is why EXHIBIT 9 stated ---- Then show the staff and client going into the men's bathroom *__for several minutes__*, then coming out with the client holding his head? Reported on 1/2/19, but PFP updated and changed it on 1/9/2019.

41. B). 1) Debbie said, they were in the rest room less than 10 minutes. 2) Anthony said, 20 to 30 seconds and they were back out as he waited in his car. 3) Ms Hopkins said they were in their long time several minutes NOT seconds. 44) Chief D. Mitchell McKinnon we saw from about 15 minutes before you all approached the restroom from about 20 minutes after. .The report changed on 1/9/19; after more edits were made, now the verbiage (**several minutes**) were taken out. Now states ----the client walked out holding the BACK of his head, to fit the conspiracy and motioned censored narrative of tampering with evidence to frame. He never once told Ms. Hopkins she was being charged. This is the same day; Rosie Hopkins called for PD to file charges on ZB for assault. Officer Sean Myers after viewing video with Anthony, Rosie, and Debbie, then met with KB mother and ZB son., after that he left went back to VOACH, and called Pathways for People Inc to meet him there to discuses" his process". Pg78 So from 1/2/19-1/7/19 Pathways for People Inc report stated several minutes then that disappears on 1/9/19, the same date Sean told Gloria and Michelle "his process". At which time Officer Sean Myers told them he was taking out charges on Ms. Hopkins. ~ Ms. Hopkins never this knew until the day of arrest April 1, 2019.

42. **Accident and or Occupational Disease arise out of and in the Course of employment.** Did the alleged accident and or occupational disease arise out of and in the course of Claimant employment? .Yes, Ms. Hopkins was given the authority by Pathways for People Inc, to take the client out into the community in the event he had behavioral issues at the program as an alternative method for a period. They also relied heavily on his mother's suggestions and recommendations. This was a recent add on discussed by his legal guardian and direct supervisor Jamie not long before the incident

37

occurred. Ms. Hopkins did as she was instructed to do by her direct Supervisor Jamie Haddock and the clients' mother. Ms. Hopkins was on duty at the time of the accident, due to the fact it has already been established during the hearing on March 26, 2021, there were no objections and all agreed; the accidents did arise out of and in the course of employment.

43. A). Ms. Hopkins reports being on duty during work hours 9-3pm in between the hours of 11-12, she was tortured, beat and struck by the client multiple times fast and hard. Ms. Hopkins reported that she was also slammed / shoved up against the restroom door/ wall by the client. This caused her to become hysterical at one point she ran out the restroom slipped and fell on the floor and wall on a watery substance and item left in the hall way, after she was barricaded and slammed by the client, she attempted to get help, but no one was around. Due to not seeing anyone she also ran to the camera in the corner of the restroom and screamed for help. Pamela Gilyard also showed Ms. Hopkins this scene on her cell phone recording and asked her what was she doing? This showed Ms. Hopkins standing in front of the camera with an open month screaming (her head off) –saying HELP! Pamela Gilyard and Stella Hayes have now disposed of it to conceal evidence/conspiracy with VOACH etc. The lobby area Ms. Hopkins ran to was disserted at that particular time she ran for help. Which is why EXHIBIT 9 stated ---- Then show the staff and client going into the men's bathroom *__for several minutes__*, then coming out with the client holding his head? Reported on 1/2/19, but PFP updated and changed it on 1/9/2019. 1) Debbie said, they were in the rest room less than 10 minutes. 2) Anthony said, 20 to 30 seconds and they were back out as he waited in his car. 3) Ms Hopkins said

38

they were in their long time several minutes NOT seconds. 4) Chief D. Mitchell McKinnon we saw from about 15 minutes before you all approached the restroom from about 20 minutes after.

44. The report changed on 1/9/19; after more edits were made, now the verbiage (**several minutes**) were taken out. Now states ----the client walked out holding the BACK of his head, to fit the conspiracy and motioned censored narrative of tampering with evidence to frame. He never once told Ms. Hopkins she was being charged. This is the same day; Rosie Hopkins called for PD to file charges on ZB for assault. Officer Sean Myers after viewing video with Anthony, Rosie, and Debbie, then met with KB mother and ZB son., after that he left went back to VOACH, and called Pathways for People Inc to meet him there to discuses" his process". Pg78 So from 1/2/19-1/7/19 Pathways for People Inc report stated several minutes then that disappears on 1/9/19, the same date Sean told Gloria and Michelle "his process". At which time Officer Sean Myers told them he was taking out charges on Ms. Hopkins. ~ Ms. Hopkins never this knew until the day of arrest April 1, 2019. 14pgred

45. Tamara Nance witness different witness's testimony and did nothing about it but cover it up.

46. Ms. Hopkins recollection of events based on the video evidence, and testimonies. Ongoing vs Motion Censored. 1). Unemployment Hearing Michelle and Gloria testified that they were told the video was ONGOING no stops, not motioned censored. Ms. Hopkins stated she witness viewing VOACH monitor in their office before the incident and she recalls it being an ONGOING system as well, not motion censored.* Deborah/Debbie testified it

39

was motion censored at the time of the incident. 3/26/21. *Anthony testified it was motion censored at the time of the incident. 6/19/20 Pg 18 It was ongoing, but to frame Hopkins so many edits were done they voach had to change it to say motioned censored and have new camera system and cameras 1installed to continue the cover up.

47. Tamara Witness and Read the timely requested 9 pg letter explaining the incident Ms Hopkins being harmed and injured by Zackary Beaty and the employer doing nothing to assist Hopkins, but worked closely with others behind the scenes to recreate a different version and narrative of what happened, just all others.

48. 1

> On January 2, 2019, I was involved in the following incident: Habilitation Worker was placed in a hazardous situation by the employer and the clients guardian, without help or assistance.
>
> As a result of the incident on January 2, 2019, I have suffered the following injuries: The accident led to the worker developing the following: Mental and Physical Impartments-PTDS, Depression, Anxiety, Chronic Head/Back Aches, Memory Loss, Body injury and Pain to the neck, nerves, back, shoulders, and muscles. Chest Pains Heart Disease Concern, Stress Induced, Cervical Spine: Mid to Lower contour flat w poster shift of the cervical weight bearing line, Mild degenerative changes mid to lower cervical spine. McGregor's line mild basilar invagination. Spinal biomechanical alterations, Uncovertebral arthrosis and facet arthrosis mid and lower cervical spine. Tenderness/Swelling C2 C5, Upper trapezius muscle spasms Sever, in cervical region, thoracic region, Motion palpable fixation was found in bilateral C5, T5. Paraspinal muscle spasms Motion palpable fixation was in bilateral C5, T5. Segmental and Somatic Dysfunction of Cervical Region, Cervical Myalgia M79.12, M99.02, M79.18, sciatic nerve pain and hand shakes. Permanent injury to lower vertebra closing w/ arthritis (bone spur nerves pain), Permanent injury to internal organ muscles dysfunction (brain, PTSD-flight or fight syndrome), additional any other part of the body not covered by the schedule: shall be up to $20,000.
>
> As a result of the incident on January 2, 2019, I have suffered the following expenses: Angier Medical Services- 351.00
> Central Carolina Hospital - 6250.71
> Central Carolina Emergency Physician,-1,473.00

40

49. 2

Kinston Chiropractor- 425.00 w/60.00 Credit
Easter Radiologist, Inc -146.00
Dirks Chiropractic Greenville FX635 LASER- 100
Mid-Carolina Radiology -28.00
Raleigh Pathology Lab -21.00
TOTAL MEDICIAL TO DATE: 8,734.71.

As a result of the incident on January 2, 2019, I have suffered the following other damages: Past and
future medical costs (heart, back, neck, shoulders, nerves, memory loss), Past income losses per yr
120,000 BA MSSW Therapist/ AFL Provider 124,000 Educational loss and future reductions in earning
capacity, Out-of-pocket costs, Property Damage losses 600.00, Vocational Rehabilitation job retraining
in a new line of work.

Without prejudice to my rights of full recovery, I am willing to accept the amount of $400,000.00 USD
in forbearance of my right to sue for all damages resulting from the incident on January 2, 2019 if such
payment is made within 30 days from the date of this letter.

If I do not hear from you within 30 days from the date on this letter, I will commence legal proceedings.
Please note that if I have to proceed with legal proceedings in order to obtain compensation for my
damages suffered, this letter will be tendered in court as evidence of your failure to attempt to resolve
this matter. Further, you may be liable for any court costs, attorney fees and damages.

50.

**DETERMINATION:**

Claimant is not disqualified for benefits.

**REASONS:**

Claimant last worked for PATHWAYS FOR PEOPLE INC. Claimant filed a claim effective 01/06/2019. Claimant was discharged due to alleged misconduct related to work.

**CONCLUSIONS:**

N.C. Gen. Stat. § 96-14.6(a) and (b) provide an individual shall be disqualified for benefits if it is determined by the Division he/she is unemployed for misconduct connected with the work. Misconduct connected with the work is defined as (1) conduct evincing a willful or wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior that the employer has the right to expect of an employee or has explained orally or in writing to an employee or (2) conduct evincing carelessness or negligence of such degree or recurrence as to manifest an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer.
Based on the Law as applied to the facts of this case, it is concluded that the claimant's discharge was not for misconduct connected with the work.

Determination Date: February 11, 2019          Appeal Rights Expire: March 14, 2019

**Section D: Allegation Information**

| | | | |
|---|---|---|---|
| Incident Date | 1/2/2019 | | If known |
| Date Facility Became Aware of Incident | 1/2/2019 | | |
| Time Facility Became Aware of Incident | 3:30pm | | |

Allegation Details

At 3:30pm on 1/2/2019, Supervisor was notified by Karen Beaty, client's mother that the clubhouse manager at the apartment complex where they live notified her that there was video surveillance of the staff member hitting the client on the shoulder, then shows the staff and client going into the mens bathroom for several minutes, then coming out with client holding his head.

Details of Physical or Mental Injury/Harm

51. Unknown at this time

There was no report of hitting on the head and there was several minutes listed her, but video in evidence showed seconds in the restroom. Even Debbie said they were in there less that 10 minutes so how did the states evidence show only seconds in the restroom because it was edited to frame Hopkins and avoid liability.

42

**The Elements of Conspiracy**

Conspiracy is the agreement by two or more people to commit a crime. Specifically, the following three elements must be present to prove a conspiracy:

1. *Agreement*: First, two people must come to an agreement (which can be an oral agreement or a mutual understanding – it does not have to be written).
2. *A Criminal Offense*: Second, the agreement must have been to commit a criminal offense.
3. *Intent*: Third, at the time of the agreement, the conspirators must have intended to commit the criminal offense.

Prosecutors often charge defendants with conspiracy to commit a crime when two or more people are involved in a crime. It does not matter whether the crime is eventually carried out or not; a prosecutor can still charge a person or people with conspiracy if these elements are met. In addition to conspiracy charges, if the crime *is* indeed carried out, the defendants will likely be charged not only with conspiracy but with the underlying crime as well. This means that prosecutors can bring conspiracy charges for any number of crimes committed by two or more people, such as drug crimes, burglary, robbery, murder, and more.

**Penalties for Conspiracy**

In general, under North Carolina G.S. § 14-2.4, the punishment for conspiracy (for both felonies and misdemeanors) is one classification level lower than that of the punishment for the underlying crime. For example, some robberies are classified as Class D felonies. If the charge is conspiracy to commit robbery, the charge would be dropped down one level to a Class E felony, and the penalty would be lowered accordingly.

52.

53. Tamara Nance knew that Ms Hopkins was attacked, Ms Hopkins was hired by another company, scheduled to take her license clinical test January 4, 2019, when she was viciously attacked by her client for program security to to her leaving the company. Karen knows it was very difficult to get her son techs due his uncontrollable dangerous behaviors. So she and her son plotted this attack on his hab worker.

54. Tamara Nance completely ignored the following below:

43

**§ 97-6. No special contract can relieve an employer of obligations.**
No contract or agreement, written or implied, no rule, regulation, or other device shall in any manner operate to relieve an employer in whole or in part, of any obligation created by this Article, except as herein otherwise expressly provided. (1929, c. 120, s. 7.)

**§ 97-11. Employer not relieved of statutory duty.**
Nothing in this Article shall be construed to relieve any employer or employee from penalty for failure or neglect to perform any statutory duty. (1929, c. 120, s. 12.)

An employer, who was aware of the likelihood that his employee will be injured in the performance of his work unless precautions are taken for his safety, but deliberately fails to take such precautions, is **liable for willful misconduct.**

55.

56. Tamara Nance turned a blind eye. Debbie was question you never looked at us. (in the

    Lobby) She said no. Hopkins showed a picture with Debbie and her worker looking

    directly at Hopkins and Zackary. Perjury amongst many witnesses under oath at the

    hearing. Pg 450 111 pg 84

57. Debbie testified ZB hand was never raised up at Hopkins in the restroom. Hopkins showed

    a picture where his hand arm was raised at Hopkins just before and after he attacked her.

    Pg 127 and 102 red1

58. Tamara Nance help the other parties and judicial members recreate their narrative because

    Ms Hopkins gave her a multitude of evidence that proved her case instead they lied on Ms

    Hopkins and used her knowledge about the case/claim in order to help them and for

    example the Picture with the lady in Red exiting the lobby door at 11:20:34. Hopkins

    constantly told everyone hundreds of times she was framed and the video was edited. The

    1st edited version was 3 minutes long 11:28-11:30, but how can that be when there is a

    scene at 11:20am with the lady in red. This is why Superior Court added more time back

    to the edited footage for the Jury Trial.

Diagnoses
1: Segmental and somatic DYSFUNCTION of CERVICAL region (M99.01), 2: Cervical myalgia (M79.12), 3: Segmental and somatic DYSFUNCTION of THORACIC region (M99.02), 4: Thoracic myalgia (M79.18)

DX LUMBAR SPINE4 OR MORE VWS

Clinical history: Low back pain x2 years

TECHNIQUE: 4 views of the lumbar spine

FINDINGS: No fracture. Normal vertebral alignment. Minimal degenerative changes with minimal marginal osteophyte formation.

IMPRESSION: Minimal degenerative changes.

Final report electronically signed by: Michael McLaughlin, MD

59. Electronically Signed By: MICHAEL MCLAUGHLIN MD on 04/08/2021 09:53 AM

60. Tamara is trying to say healthcare professional do not know what they are talking about.

She got clear medical records then manipulated them to go with her. narrative and abuse

of discretion acting out of the scope of her practice. Medical evidence shows Hopkins was

injured.

CERVICAL SPINE:

APOM, APLC and lateral views of the cervical spine are submitted. There is a right list of the cervical spine. The mid and lower cervical contour is flat with a posterior shift of the cervical weight bearing line. Mild degenerative changes are noted within the mid and lower cervical spine. McGregor's line is suggestive of mild basilar invagination. This is visualized in part. There is no other significant osseous, joint, or soft tissue alteration apparent.

IMPRESSIONS:
1). Spinal biomechanical alterations noted.
2). Uncovertebral arthrosis and facet arthrosis, mid and lower cervical spine. The cervicothoracic junction is not visualized on the lateral view due to overlie. If clinically warranted, a swim lateral view may be helpful.
3). There is suspicion of mild basilar invagination. Clinical correlation is recommended.

Jack Henry, D.C., D.A.C.B.R.

61.

45

## C-Exam
C-ROM: Flexion Extension with pain and with mild restriction    Orthopedic Tests: Bilaterally Negative Cervical Compression Cervical Distraction    Orthopedic Tests: Bilaterally Positive Max. Cervical Compression    Reflexes: Biceps Triceps 2+/ 2+    Tenderness/swelling: C2 C5 Muscle Tone: Upper trapezius muscle spasms Severe    Carotid Bruit: Bilaterally Negative

## Palpation
Paraspinal muscle spasms was found in cervical region, thoracic region. Motion palpable fixation was found in bilateral C5, T5.

## Assessment:

### Assessment
After today's assessment problem is considered a new condition.

62.    04/20/2021.  Patient: Rosie Hopkins.  Generated by: Gary L. Wojeski DC

## Diagnoses
1: Segmental and somatic DYSFUNCTION of CERVICAL region (M99.01), 2: Cervical myalgia (M79.12), 3: Segmental and somatic DYSFUNCTION of THORACIC region (M99.02), 4: Thoracic myalgia (M79.18)

## Procedures:

### Radiology
Cervical Spine, AP & Lateral (72040), Radiographs taken at Kinston Chiropractic, Date of study: 03/19/2021.  Xrays sent out to Radiologist for interpretation.

### Adjustments
Adjusted bilateral C5 with Diversified technique and Drop technique. Adjusted bilateral T4-5 with Anterior thoracic technique and Diversified technique.

### Treatments
CMT 1-2 Spinal Regions (98940)
    - Segmental and somatic DYSFUNCTION of CERVICAL region (M99.01), - Cervical myalgia (M79.12), - Segmental and somatic DYSFUNCTION of THORACIC region (M99.02), - Thoracic myalgia (M79.18)
Intersegmental traction (97012) was performed on Lv2, Thoracic and cervical region.
    - Segmental and somatic DYSFUNCTION of CERVICAL region (M99.01), - Cervical myalgia (M79.12), - Segmental and somatic DYSFUNCTION of THORACIC region (M99.02), - Thoracic myalgia (M79.18)
Expanded exam (99202) based on 15-29 min. total time spent with patient.
    - Segmental and somatic DYSFUNCTION of CERVICAL region (M99.01), - Cervical myalgia (M79.12), - Segmental and somatic DYSFUNCTION of THORACIC region (M99.02) and -
63.    Thoracic myalgia (M79.18).

64. PFP Agency Objective# 8 Provide an evironment,which ensure consumer and

STAFF SAFTEY and well being at ALL times and in ALL situation etc

46

65. Pathways for People Inc Michelle and Gloria turned a blind eye to they own written clients rights.

> **e.  Participation in any illegal or suspicious activity or acting out, or defacing Pathways for People property, will not be tolerated. Any threat or act of violence directed toward staff, other clients, or visitor to the clinic is grounds for immediate dismissal from the program. Any individual dismissed under these circumstances will be barred from reentry for one (1) year and must have approval from the staff and Executive Director.**

66. 0Tamara Nance threatens to deny my claim because I chose not to testify since I was the acting counsel. Then stated if you do not want your claim dismissed you need to give testimony under oath.  Tamara knew I had a open criminal case and still force me by threating me to testify when I had opt out of doing it initially. 187.pg 44 of 1034  19-2530

67. Tamara informed Hopkins that she was putting on evidence to impeach what was done , Tamara then removed those 6records hiding evidence that proves Hopkins claim and showing those witness committing purgy. 397-1034

68. Tamara sabotaged my subpoenas for witness and request for the club house video footage when I requested it. She called Michael Denning's after I spent money to subpoenaed him and told him to disregard it. He is no longer a Judge to my knowledge or an acting part time judicial member. He retired because of my case that he was afraid of being caught up on for assisting with framing me and placing a false charge on to me Ms Hopkins. Once he When he saw the states evidence skip glich ect..it was edited and you could clearly see that, he learned I recorded the trial then,1996 he step down shortly after..

47

        MS. HOPKINS:  That's what - if - only two people

on this recording, is Rosie Hopkins, myself, and

allegedly Chief McKinnon.

        THE COURT:  Okay.  Well let's go off the record

while you play the recording and then you can ask your

- his - your question, is that him, on the recording.

And when you ask that, we'll be back on the record

but---

        MS. HOPKINS:  Okay.  I want to make sure---

        THE COURT:  ---she can't be on the record when

it's playing.

        MS. HOPKINS:  ---we---  Right.

  (OFF THE RECORD)

        THE COURT:  Okay.  I just want to---  Are we on

the record?  Okay.  I want to state, I'm - I'm - I'm -

I'm somewhat concerned that what is trying to be done

here is to develop testimony under oath for purposes

of your criminal appeal, developing evidence that has

70. Ms Hopkins of submitted Expert Witness Chris Clay affidavit that proves the video was

    edited or missing clips Tamara Nance refused to let it come in.

71. On Miller Rosier from allowing Ms. Hopkins to present her evidence.

72. Nance discriminated and treated Hopkins much different than she did Carolyn Marcus.

48



Nance, Tamara R
to me, Carolyn, Dockets

An order granting a one-week extension of time to file written contentions and proposed Opinions and Awards is being filed this morning. The parties have through July 22, 2021 to file these documents. I wanted to let you know first thing this morning that the order is forthcoming. Thank you.
Tammy Nance

73. Its alleged he is assisting with hiding Tamara Nance unlawful actions she stated to Ms Hopkins ___There is no evidence you can present here today that would make -that would 7enable me under any circumstance to say___,1 "The Court that ruled so far got it wrong", 12L14 pg 397 1034 Hopkins—so what was the purpose of having a hearing and dragging claim over a year. The hearing was pointless with a Judge like this. Then she took over 70 percent of the evidence and hide them, then recreated a fabricated narrative.

74. I was not allowed to submitted any evidence at Michael Denning District Court Trial only about 1 or 2 documents, but still proved my case, I had well over 70 pieces of evidence District Court was hiding and removing them from the file or public file as so did Nance in NCIC records and Hopkins emails were hacked as well, but Ms Hopkins still made copies of most documents they thought was erased. Tamara admitted to having her tech work on retraval of my email documents then that's when they all started to disappear and when I requested them the IC they said they didn't have them anylonger. MIND Trick and Cover Up. I am already on top of everything.

75. The unemployment adjudicator court officer who was the only judicial member that act impartial and unbiased ruled in Ms Hopkins favor, after reviewing the facts, laws, and testimonies. She was bound by the same nc laws and judicial standard as the others, but

she did not play their dirty game or part in unlawful acts to scratch ea. others backs. She was unbiased and impartial and she is to be commended.

76. WANDA BLACHE TAYLOR, Commissioner LIED and conspired about NCIC getting Hopkins appeal timely order reads: The full commission filed opinion and award in the matter on April 1, 2022, which denied plaintiff claim. Pursuant to the workers compensation act a party may within 30 day from the date of the award or within 30 days after receipt of notice to be sent by any class of US mail20 or electronic mail of the award, but 097-86 2021. Plaintiff had 30 days from April 1, 2022 "UP TO" AND including **May 2, 2022** to file her notice appeal. Wanda stated Plaintiff's notice of appeal was filed with NCIC on May 3, 2022 and is therefore untimely.

Hopkins further conducted research and found that WANDA TAYLOR ORDER STATED THAT MS HOPKINS HAD UP UNTIL MAY 2, 2022 TO BE RECIEVED BY THEIR OFFICE. US POSTAL OFFICE SHOWS IT WAS PICKED UP BY THE NCIC ON MAY 2, 2022.

IT APPEARS MS HOPKINS DOCUMENTS WAS INTENTIONAL WITHHELD BY THE NCIC STAFF AND WRONGFULLY MADE IT APPEAR AS IF THEY DID NOT RECEIVE IT IN A TIMELY MANNER WHEN IF FACT THEY DID SO THEY COULD UNLAWFULLY DENY HOPKINS CLAIM.

HOPKINS SHOWED PHYSICAL PROOF OF US POSTAL TRACKING INFO WITH CERTIFIED RECEIPT.

NCIC failed to take accountability for their mistake and conduct. Is this not proof of when it NCIC retrieved their mail. See below

50

**Tracking Number:** 70212720000187826250

Remove ✕

Your item was picked up at a postal facility at 11:54 am on May 2, 2022 in RALEIGH, NC 27699.

USPS Tracking Plus® Available ⌄

### ⊘ Delivered, Individual Picked Up at Postal Facility

May 2, 2022 at 11:54 am
RALEIGH, NC 27699

Get Updates ⌄

| Text & Email Updates | ⌄ |
|---|---|

**Tracking History** ⌃

**May 2, 2022, 11:54 am**
Delivered, Individual Picked Up at Postal Facility
RALEIGH, NC 27699
Your item was picked up at a postal facility at 11:54 am on May 2, 2022 in RALEIGH, NC 27699.

**May 2, 2022, 8:46 am**
Arrived at Post Office
RALEIGH, NC 27611

**May 1, 2022, 11:56 pm**
Departed USPS Regional Facility

JUDGE RICHARD MYERS 11 RECUSE YOURSELF YOU HAVE BEEN ADDED TO THE COMPLAINT.

77. It is alleged that and appears that Judge Richard E. Myers II is assisting to make sure Ms Hopkins federal case is denied or dismissed in order to protect the Judges and Prosecutors and Companies that was listed in the first complaint. In his order he writes: 1983 litigation would NOT result in INCONSISTENT JUGEMENT OR RETRIALS OF OLD STATE

CONVICTIONS THROUGH PATHWAYS OTHER 2THAN those delineated by Congress, but didn't list. He and others have tried to make a wrongful conviction stick indirectly or directly by either one or all of the following manipulating the laws, being partial at times, abuse of discretion, failure to reques one self, or use such rule to deter the truth being revealed, they still have not told me how they want my evidence to be submitted.

78. When they clearly know or should know Ms Hopkins was wrongful convicted and attacked since he clearly saw in evidence Ms Hopkins was beat and hit by Zackary, but aided in concealment of evidence making it difficult to Ms Hopkins to prove her claim/case. When Tamara Nance /gave their office a call as she did to Judge Vincent Rozier and the list goes on. Judge Myers did not do anything to this case until he got notice by NCIC officers. I waited for his response after I submitted the documents, but he did not respond for sometime, I received much later an motion/order of dismissal by Judge Numbers. However, when I began submitting evidence to the record, Myers put a stop or said I was not able to submit evidence or at least that's was told to me. Interesting, but before all of that, I informed Tamara Nance of the federal suit and the laws rules acts she violated and crimes she committed tampering with evidence she placed an order to seal the evidence to cover her (A) and others involved. It is alleged and a strong possibility that Judge Myers is somehow blood related to Arresting Officer Sean Myers and should not be serving on this case. I do not feel he is right for this case. There have been to many interferences with this case while he presided over it. It needs a new Judge that have not been in contact with the other parties in all due fairness. He has been accommodating with extension, but he should

not serve on this case. Tamara have contacted numerous Judges to cover up what she has done. I don't want Myers apart of that.

79. Tamara and others have put an unlawful stop to Hopkins appeal and Tort claim at NCIC and the claim at the attorney general office. The investigation had begun and I was contacted by the assigned attorney so he requested another month extension from me and I agreed. Tamara did not want them to be investigation her and her office. Wanda was in charge to make a decision and now she is part of the conspiracy because she lied. She tried to renigg/ on decision because she had approved for Hopkins to go the next level, then behind closed doors. They all form a way to try and Hopkins case with the attorney general.

80. **Where allegation of such claim fail to demonstrate a conviction has been "reversed on direct appeal, expunge by executive order etc",** Judge Myers wrote.

81. Hopkins response: At this time October 2022, the case is with the Assistant Appellate Defender Office; therefore, I would request to Amend or add to this complaint of the findings once everything is complete and a decision is rendered.

82. See Apex PD complaint attached

83. See DHHS complaint attached

A discovery for evidence has not been requested by the courts at this time. I am waiting for the quest and instruction on how to submit evidence.

Rosie Hopkins

17

## **Apex Police Department:**

18
.
19

20   Officer Sean Myers, was only dispatched due to Ms. Hopkins calling for assistant to view the

21   video footage and pressing charges against her attacker Zackary Beaty.

22

23   Instead after Officer Sean spoke briefly with Anthony Sacco and Debra Gabrielle, he called for

24   Ms. Hopkins to enter to view what edited video clips Anthony decided to show, but not all. Ms.

25   Hopkins was pointing out the edits as it played and showed the volatile scène at the rest room of

26

the client shoving her extremely hard into the door/wall hitting her head as she held her cheat/heart in distress gasping for air. Nose bleeds out for 3 days straight there after, possibly suffered a concussion. They have now deleted and removed that scene after Sean Myers began his process of investigation.

The scene when Zackary got out to the vehicle in the parking lot and strategically stab Ms. Hopkins several times with martial art form, three to four finger tips strikes causing extreme and intense pain as Ms. Hopkins hollered and held herself clinching her arms and chest had already been deleted and removed before 1/9/2019. Hence: Pathways for People Inc was not in a big rush to review an alleged assault of a client that Karen reviewed the exact day, just an hour or so a later. What was Pathways waiting on from 1/2/19-1/9/19, and this was only done to Ms. Hopkins attempting to file charges and calling for police assistance.

Ms. Hopkins right after viewing the footage with Anthony, Sean, and Debra said, I want to file charges against Zackary for Assault and attacking her. **Officer Sean Myers refused and said No, I'm not filing charges on him, a person with intellectual disability, you hit him.** Then Officer Sean asked staff for Karen's contact information and told Ms. Hopkins to go to her car and wait for him and to not leave.

No one ever called the police on Ms. Hopkins, not the Clubhouse, client's parent Karen, nor Pathways for People Inc. the employer. If Karen wanted to press charges against Ms. Hopkins she had the opportunity and time, but she never did. Why would she, she's getting everything she wanted (Program Security/Ms. Hopkins career ruined of working in the field), she didn't want

her or Zackary to slip up and get caught up. Hence: The reason she refused to allow Zackary to speak with Pathways for People Inc. about the incident. Red Flag. Remember: Zackary, yelled in her face, in Ms. Hopkins back seat when she tried to get him out the she was as Bigger of a Liar than, I am", he said to her Could it be Zackary, was upset that his mother made him attack Ms. Hopkins against his will and it angered him, remember he refused to leave with her and wanted to remain with Ms. Hopkins. He did his dirty deed, for her, but ultimaly for both as he said, before mother knows best, Hence: **she testifies when she saw him, "he did not have his hand (everyone making such a big deal about) in his head".** It was staged to appear one way, when it was another. Ms. Hopkins saw him in rage pulling his hair on his head; the oddly looked at his self in the mirror and just before walking out planted his hand on top of his head. Why didn't he run to get help if he was harmed? He never did, but Ms. Hopkins did and they deleted the scenes and edited the footage to their illusion in framing Ms. Hopkins. Ms. Hopkins even tried to flay waive down a police officer grey suv when Zackary was severely attacking her in the parking lot, but they drove on by not seeing them and the club house deleted that scene as well.

_**Ms. Hopkins called the police department to help assisted her**_, Sean Myers was dispatched, shortly after; the assault was turned on her and **everything she said was somehow flipped back to her.** On 1/9/19 by Officer Sean Myers and co conspirators, decided she was guilty of abuse. On 4/1/19, 3 months later she was swarmed by officers and arrested, detained, and charged with assault on a disabled person. 2 to 3 police cars, and an officer asked her does Wanda live there as if they were on a sting operation, further traumatizing Ms. Hopkins. Systematic Racism/Discrimination

It was later discovered that the Apex Police Department needed cultural awareness within their APD organization initially that later surfaced when it came to African Americans and Lori Nelson as she supported Black Live Matter Cause and was texted by a police officer of Apex PD, where he was appalled that she was upper white middle class and would support such as cause, he will not tolerate that anymore, it's a slap in his face. This was and is all over the NEWS, reported worldwide.

Ms. Hopkins was subjected to being treated differently by the **Apex Police Department and Officer/ Chief Deputy in violation of rights, because of her color and discriminated against.**

Ms. Karen Beaty and her son, on the other hand, was handled with the utmost respect, even to the point the officer investigation was already one sided-per his narrative, *she was asked* did she want to press charges on what was "not caught" on camera and given a report number. Ms. Hopkins was sent to her car and told to wait like a …

**OFFICER SEAN MYER REFUSED MS. HOPKINS *RIGHT TO PRESS CHARGES* AGAINST HER ATTACTER; AFTER VIEWING SERVERLY EDITED FOOTAGE.**

HE CO. CREATED IN CONSPIRACY TO FRAME BY DELETION OF ADDITIOAL VIDEO FOOTAGE TO BARE FALSE WITNESS IN CONDUCTING AN UNETHICAL/ UNLAWFUL INVESTIGATON TO FRAME AND GAVE FALSE TESTIMONY UNDER OATH.

<u>Failure to fully investigate the facts surrounding a case in            this            matter proves a lack of probable cause- Natasha Murdock hindered/stopped from giving testimony etc.</u>

**CHIEF DEPUTY MITCHELL MCKINNON** CONSPIRED BY CONCEALING THE TRUTH AND COVERING UP CONSPIRTORY ACTS/EVIDENCE AND GIVING FALSE TESTIMONY UNDER OATH/ CONDUCTING AN UNLAWFUL INVESTIGATION AFTER VIEWED THE VIDEO FOOTAGE HIMSELF.

They all decided to alter video footage and or conspire to conceal documents and facts in order to aid in finding Ms. Hopkins guilty of a crime she did not commit.

## Department of Health and Human Service
### -Health Care Registry

It's alleged, but believed Pamela Gilyard asked Pathways to file an appeal against Ms. Hopkins receiving her unemployment to use it along to aid in her/their premeditated and premature decision of substantiated finds of abuse based on fraudulent video footage. This was filed about a day or so before the expiration on appeals could be filed.

On 3/6/2019, Pamela Gilyard, conducted an investigation with Ms. Hopkins about 2 months later and told her within the first 3 to 5 minutes of introduction that if she is working she needs to report to her for the next 12 months. Ms. Hopkins thought it was strange, and felt the DHHS investigation already found her guilty ever before she spoke with her to get her side of events. Ms. Hopkins there was something suspicious and unethical about this investigation. Later, Ms. Hopkins reported this to Rita Horton, Head of the Department, then Ms. Gilyard attempted to

retracted her statement in attempts to cover it up and their conspirator plan of a decision that was already decided on 1/9/19, with Officer Sean Myers, of placing the blame and accusing Ms. Hopkins of abuse/assault. However, Ms. Hopkins was unaware at the time charges were getting pressed against her, but everyone else knew. Ms. Hopkins found out on 4/1/2019, the actual day of her arrest 3 months later.

Ms.Hopkins had been waiting on Pamela final decision, but noticed she was always pushing back the date for some odd strange reason and making excuses as to why she have not made her final decision, as if she was waiting on someone or thing to take effect.

The investigation with Pamela Gilard was already set up for Ms. Hopkins to fail or be found guilty ever before her interview. They were trying to figure out how they were going to put it all together.

During the investigation Pamela began recording and pulled out her cell phone to show clips of the video footage, she retrieved from the club house. In one scene she asked what were you doing in that scene?

It showed Ms. Hopkins yelling directly into the restroom camera screaming hysterically for help. Pamela later deleted and removed that clip and scene from the DHHS evidence in attempt to help aid in framing Ms. Hopkins of abuse, to not show she was in fact trying to get help and was in complete distress. This clip is documented in the 1st report and has time in seconds.

She showed Ms. Hopkins another clip, of the scene the client and Ms. Hopkins were standing at the restroom in the door way and asked Ms. Hopkins who hand came out 1st? Ms. Hopkins said his, pointed and showed her, but she refused to look for the first couple of times in disbelief. They found away to lie and turn that on Ms. Hopkins. Everything, Ms Hopkins was discovering that would exposé all defendants, they took the information, and shared it with one another to conceal and lie about their fraudulent acts. Ms. Hopkins showed the clients hands coming up to attack her. Ms. Hopkins stated when his hands came up at me, I reacted, in fear/self-defense. Pamela Gilyard and Ms. Hopkins took a lunch break, Ms. Hopkins noticed Pamela took an extended period of time in coming back to get her from lunch. It was later discovered why Pamela rushed Ms. Hopkins into signing the investigative report. She had altered/tampered with the investigative report while Ms. Hopkins was away at lunch and in the restroom. Pamela was changing the wordings around in Ms. Hopkins statements to assist her premature conspiracy decision of abuse to a client to further frame Ms. Hopkins.

Rita Horton failed to properly investigate/handle complaint against her investigator in this situation Ms. Hopkins constantly reached out to her and met with her. Instead, they set up another investigative meeting unbenouse to Ms. Hopkins with Stella Hayes; instead of getting the complaint against Pamela for her wrong doing and correcting fraudulent falsified statements, they wanted to cover up the entire 1st investigation up, in which she, Stella also falsified statements and documents on the second interview and did not allow Ms. Hopkins to correct all that needed to be corrected. Stella refused to allow Pamela to show evidence (that she knew she could not really show due to them deleting/concealing it) from the evidence in prior investigation

saying they don't have it, along with other evidence Ms. Hopkins gave in proving her innocents. Stella constantly hindered the investigation. They showed several fresh brand new severely edited clips that were fabricated to frame Ms. Hopkins. My question is when and who asked for that footage almost a year or later, the initial interview was over on 3/19/19. Pathways told the unemployment adjudicator that the State who were conducting their investigation did not need nor request a copy of the video either. Now, why would they get all of these clips that were not in their possession in the 1st interview on 3/6/19. Ms. Hopkins asked repeatedly how to and to file complaints against Pamela, but it was often blocked or not followed through on by her superiors to Ms. Hopkins knowledge. Ms. Hopkins requested to file a complaint with Rita's superior against Pamela unlawful acts and unethical investigation; however, it was blocked. Ms. Hopkins requested/subpoenaed evidence and Pamela Gilyard witness testimony on or about 5/2021 and it was blocked and denied after the commissioner signed off on the subpoena. Assistant Attorney General....declined stating it's still an open case ect, but attended hearing.

Recap:

**Personal Injury/Retaliation/Skin Tone/Color:** I Ms Rosie Hopkins have a complaint on the following investigators and the Department of Health and Human Services, Division of Health Service Regulation Investigators UNLAWFUL BUISNESS PRACTICES (s) **Pamela Gilyard RN and Stella Hayes RN** concerning the case with PATHWAYS FOR PEOPLE INC 1/2/2019. It is alleged that Pamela have (1) **falsified documents to incriminate Ms Hopkins of abuse**, (2) **deleted**, and or (3) **took out vital evidence in this case/and or reframed from getting/viewing the full unedited footage in her investigation (4) in order to deceive and misrepresent the material facts of the case, (5) 3/6/2019 she predetermined a verbal substantiated finding when telling Ms Hopkins to report to her for the next 12 months**, before Ms Hopkins arrest 4/1/2019 (APRIL FOOLS DAY) and said charge (6) ethical volitions in attempts to assist conspirators in framing Ms Hopkins for the alleged abuse to a client; (7) **improper unethical investigation. (8) tampering with evidence to frame, and or disposal after the first investigation was completed with the interview w/ Ms Hopkins, Pamela got rid of the clips showing the**

clients hands raised up towards Ms Hopkins as she was cornered and back up against a wall AND when Ms Hopkins ran to the camera yelling for help!, (9) **concealed/failed to consider clients records of his violent history (ISP)** *Individual Support Plan* **and deemed a community RISK**: in order to place all the blame on Ms Hopkins. (10) **more than likely did not interview or take written statement from the EYE WITNESS** at that time of Natasha Murdock on the planned attack against Ms Hopkins, if so this should have been proof it was a planned attack (SET UP) Extortion Scheme. If anyone needed to be charged it should have been Zackary for assault and his mother Karen for Exploitation of her son using his disability to gain and blackmail the agency to secure his position and worker. Also it could have added to his violent state and boosted his income level of care with the state. The more violent a client is the more money the agency gets (HIGH RISK). The client Zackary stated, ***"If we want to get RID of someone, we know what to do, AND record them." Then laughed and said Rosie do you know, I've had 10 workers in the past year not including the weekend.*** He made several statements during that conversation. He also said he antagonized his worker to death and laughed (scapegoat cover up from real motive) trying to cause a worker to react. He and his mother are conartist.

**PAMELA GILYAR RN/ STELLA HAYES RN**-FALISIED INVESTIAGTIVE REPORTS TO FRAME MS HOPKINS, DELELTED AND REMOVED VIDEO EVEDNECE TO CONCEAL MS. HOPKINS DISTRESS AND BEING ATTACKED BY THE CLIENT,THEY ALL CONSPIRED TO FRAME MS. HOPKINS KNOWING SHE WAS THE VICTUM AND THE CLIENT WAS NOT ABUSED AT ALL.

**From:** Rosie Hopkins <>
**Sent:** Thursday, April 29, 2021 1:30:03 PM
**To:** Maddrey, William < >
**Subject:** Re: NCDHHS Objections to 20-044326 Subpoena Duces Tecum Emailed April 28, 2021

**According to Madrey, William:**

Body Removed

Fri. Apr 30. 10:17 AM

**William F. Maddrey**
Assistant Attorney General

Health Service Section

I am not going to comply with the subpoena you submitted unless the Deputy Commissioner orders me to. The Deputy in FACT SIGNED THE subpoena, but later denied/cancelled it.

However, Mr. Maddrey was present at the hearing, but not Pamela Gilyard nor Stella Hayes. According to Mr. Maddrey:

January 10, 2019, NCDHHS notified the petitioner by letter that, pursuant to N.C. Gen. Stat. §

2

131E-256(a), it was investigating an allegation that she had abused a resident of Pathways for People Day Program. However, the investigation is still active and the allegation has not yet been substantiated. Should the allegation be substantiated, pursuant to N.C. Gen. Stat. § 131E-256(d), Petitioner would have an opportunity to appeal the resulting listing in the Health Care Personnel Registry and to conduct discovery. However, the production of these documents at this stage would compromise the ability of NCDHHS to complete its investigation.

Respectfully submitted, this the 29th day of April, 2021.

JOSHUA H. STEIN
Attorney General

William F. Maddrey
Assistant Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, N.C. 27602
919-716-6883
N.C. State Bar No. 55277

Meanwhile Ms. Hopkins life is in ruins and shambles with the charge still on her record/ registry and can't get a job in her career field to say the least, its going on 2 ½ years. Pathways for People

Inc and told the Judges, ***it was substantiated findings*** of abuse. Furthermore, how long does it

take  DHHS investigators to investigate then confirm and close their cases of abuse? 2+ YEARS

ON A SIMPLE ASSULT CASE THAT HAD VIDEO EVIDENCE!!!!

**Certificate of Service**

I Rosie Hopkins have mailed complaint to the US District Court Clerk Office Rm 209 to disperse complaint out to certain parties for a response in order to move forward with suit.

Note: At this time October 2022, the case is with the Assistant Appellate Defender Office; therefore, I would request to Amend or add to this complaint of the findings once ~~Sent by US mail.~~ everything is complete and a decision is rendered.

Rosie Hopkins _(signature)_                    Date: 10/27/22

**Motion:**

And or Request for another extension until decision have been made from the Appellate Defender Office to make adjustments to this complaint.

Rosie Hopkins _(signature)_                    Date: 11/27/22